UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Patrick's Restaurant, LLC, | File No. 18-cv-00764 (ECT/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Sujit Kumar Singh, | |
| Defendant. | |

Defendant Sujit Kumar Singh ("Singh"), a citizen and resident of India, appeals from Magistrate Judge Katherine Menendez's order authorizing alternative service via email pursuant to Fed. R. Civ. P. 4(f)(3), which allows "an individual in a foreign country" to be served "by other means not prohibited by international agreement, as the court orders." For the past nine months, plaintiff Patrick's Restaurant, LLC ("Patrick's") has been unable to serve Singh in India under the Hague Convention. But Singh is well aware of the pending action, as evidenced by his lawyer's appearance in the case for the limited purpose of arguing the propriety of alternative service. Because the plain text of Rule 4(f)(3) does not require exhaustion of service under the Hague Convention, and email service is not inconsistent with the Hague Convention or with due process, Judge Menendez's order will be affirmed.

I

Review of a magistrate judge's ruling on a nondispositive order, including an order for alternative service, is "extremely deferential." *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008). A ruling will be modified or set aside only if it "is clearly

erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "A ruling is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. A decision is contrary to law when a court fails to apply or misapplies relevant statutes, case law or rules of procedure." *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1026 (D. Minn. 2018) (citations and internal quotation marks omitted).

II

Singh objects to Judge Menendez's order on several grounds, which can be consolidated into two questions on appeal: (1) Must a party exhaust Hague Convention procedures before pursuing alternative service under Rule 4(f)(3)? (2) Is email service preempted or precluded by the Hague Convention?[1]

A

Relying primarily on *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002), Judge Menendez determined that "Patrick's Restaurant is not required to exhaust the Hague Convention procedures"—whatever "exhaustion" means to Singh, which is not altogether clear—"before pursuing service via an alternative means." ECF No. 17 ("Order") at 2; *see Rio Props.*, 284 F.3d at 1015 (holding that Rule 4(f)(3) is not a "last resort" (quoting *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D. Me. 2001))).

---

[1] Because these are purely legal questions, no recitation of the facts is necessary. Regardless, the relevant facts are described in ample detail in Judge Menendez's order. *See* ECF No. 17 at 1–2.

As Judge Menendez aptly noted, nothing in the plain language of Rule 4(f) suggests that a party must exhaust the Hague Convention before pursuing alternative service under Rule 4(f)(3). Order at 2–3. Rule 4 offers three alternatives in the disjunctive, and the third is for service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3); *see also Smith v. Gnassingbe*, No. 07-cv-4167 (ADM/JJK), 2009 WL 3300037, at *9 (D. Minn. Oct. 13, 2009) (referring to these as "several options for service"); *In re LDK Solar Secs. Litig.*, No. C-07-05182, 2008 WL 2415186, at *2 (N.D. Cal. June 12, 2008) ("[Rule] 4(f)(3) stands independently of [Rule] 4(f)(1); it is not necessary for plaintiffs to first attempt service through 'internationally agreed means' before turning to 'any other means not prohibited by international agreement.'"). Had the drafters of Rule 4(f)(3) wanted to constrain its applicability, they easily could have provided a qualifying clause such as "If service under Rule (f)(1) or (f)(2) fails…" The fact that they did not must mean something. *See Rio Props.*, 284 F.3d at 1015 ("[C]ertainly Rule 4(f)(3) includes no qualifiers or limitations . . . .").[2]

Nor does the Hague Convention contain any exhaustion requirement. In fact, Article 15 contemplates that courts may enter default judgment after six months if Hague Convention methods have not resulted in successful service. *See* Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), art. 15, Nov. 15, 1965, 20 U.S.T. 361 (allowing for default judgment so long

---

[2] To be sure, as Singh notes in his objection, *Rio Properties* involved attempted service on a resident of Costa Rica, which, unlike India, is not a signatory to the Hague Convention. Def.'s Obj. at 4; *see Rio Props.*, 284 F.3d at 1012, 1015 n.4. But that difference is not material. Under the plain language of Rule 4(f), there is no exhaustion requirement.

as "the document was transmitted by one of the methods provided for in this Convention," at least "six months . . . ha[ve] elapsed since the date of the transmission," and "every reasonable effort has been made to obtain [a certificate of service] through the competent authorities of the State addressed"). Read together with the preamble of the Hague Convention, which proclaims the signatories' intent to ensure prompt service, alternative service under Rule 4(f)(3) is entirely consistent with the plain language and purpose of the Hague Convention. *See* Hague Convention pmbl. (providing that "[t]he States signatory to the present Convention . . . [d]esir[e] to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee *in sufficient time*" and "*expedit[e]* the procedure" for service abroad (emphasis added)).

Moreover, it is difficult to say when a party has "exhausted" Hague Convention service. Must a party pursue waivers of service before seeking alternative service, as Patrick's did here? How many times does Patrick's have to attempt service via the Hague Convention? And how frequently must Patrick's follow up with India's Central Authority? The difficulty of drawing a line between attempts that add up to exhaustion and those that do not is another reason not to read an exhaustion requirement into the text of Rule 4(f)(3) and the Hague Convention. *Cf. Millbrook v. U.S.*, 569 U.S. 50, 57 (2013) (declining "to read such a limitation into unambiguous text" where Congress did not elect to "further narrow the scope of the proviso").

B

Singh raises his two other objections in the alternative: First, he argues that under *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017), the Hague Convention method of service is mandatory and "precludes alternative methods of service not authorized by the Convention." Def.'s Obj. at 2. Second, he seems to argue that even if alternative nonauthorized methods are permissible in general, email service is impermissible because India has objected to service by postal channels under Article 10 of the Hague Convention. *See id.* at 4–5 ("India's blanket objection to alternative methods of service in Article 10 should be construed as precluding other methods of service from being adopted as a creative end run around Article 10's prohibition on service of judicial documents via mail . . . ."). Neither objection justifies reversal of Judge Menendez's order.

First, Singh argues that one of the Supreme Court's "central holdings" in *Water Splash*, characterized by Judge Menendez as "non-authoritative dicta," Order at 3, was that "[t]he Hague Service Convention specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies," Def.'s Obj. at 2 (citation and internal quotation marks omitted). Singh seems to be arguing that email service is preempted as an "inconsistent method of service." As Judge Menendez correctly concluded, this argument misapprehends *Water Splash*.

Singh's argument depends on the meaning of one sentence from the opening paragraph of *Water Splash*: "To that end, the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." 137 S. Ct. at 1507 (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*,

5

486 U.S. 694, 698 (1988)). *Water Splash* recited this excerpt of *Volkswagenwerk* in an effort to provide background information not in any way connected to the Court's substantive analysis. In fact, the Court had not even identified the operative question before it when it made this reference to *Volkswagenwerk*. It is quintessential dicta, as Judge Menendez correctly found.[3] Order at 3; *see Passmore v. Astrue*, 533 F.3d 658, 661 (8th Cir. 2008) ("Dicta is a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." (citation and internal quotation marks omitted)).

Second, in a similar vein, Singh claims that India's objection to Article 10—which, among other things, says India doesn't approve of service via "postal channels"—means that India is opposed to email service. India has objected to Article 10 of the Hague Convention, which reads as follows:

> Provided the State of destination does not object, the present Convention shall not interfere with –
> a)    the freedom to send judicial documents, by postal channels, directly to persons abroad,
> b)    the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
> c)    the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

*See also Gurung v. Malhotra*, 279 F.R.D. 215, 217 (S.D.N.Y. 2011). When a country objects to Article 10, as India has, the logical corollary is that the Hague Convention *does*

---

[3]    Even if this were not dicta, the result would be the same. It is conceivable that email is a method of service that is not "specifie[d]" in the Hague Convention but is still not "inconsistent" with the Hague Convention.

6

interfere with, or preclude, "send[ing] judicial documents, by postal channels, directly to persons abroad." The question, then, is whether "postal channels" encompass service by email. Put another way, is India's express rejection of the means enumerated in Article 10 an implicit rejection of other related means, such as electronic transmission?

Courts are split on this issue, but a strong majority have concluded that a country's objection to Article 10 does not equate to an objection to email service. *See F.T.C. v. Pecon Software, Ltd.*, No. 12 Civ. 7186, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10."); *see also, e.g.*, *Jackson Lab. v. Nanjing Univ.*, No. 1:17-cv-00363, 2018 WL 615667, at *3–4 (D. Me. Jan. 29, 2018); *Sulzer Mixpac AG v. Medenstar Indus. Co., Ltd.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015); *DisputeSuite.com, LLC v. Credit Umbrella Inc.*, No. CV146340, 2015 WL 12911757, at *4 (C.D. Cal. June 2, 2015); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 291 F.R.D. 172, 175 (S.D. Ohio 2013); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012); *Gurung*, 279 F.R.D. at 219. *But see, e.g.*, *Graphic Styles/Styles Int'l LLC v. Men's Wear Creations*, 99 F. Supp. 3d 519, 523 (E.D. Pa. 2015); *Compass Bank v. Katz*, 287 F.R.D. 392, 396–97 (S.D. Tex. 2012); *OGM, Inc. v. Televisa, S.A. de C.V.*, No. CV 08-5742, 2009 WL 1025971, *3 (C.D. Cal. Apr. 15, 2009); *Agha v. Jacobs*, No. C 07-1800, 2008 WL 2051061, at *1–2 (N.D. Cal. May 13, 2008).

The Court joins this strong majority of courts, finding their analysis better reasoned and more persuasive. *See Pecon Software*, 2013 WL 4016272, at *5 ("Service by email . . .

[is] not among the means listed in Article 10, and India has not specifically objected to [it]."); *DisputeSuite.com*, 2015 WL 12911757, at *4 ("Moreover, the Court is not aware of any other international agreements with Russia [which, like India, has objected to Article 10] prohibiting service via email."). Email does not fall within the text or the spirit of "postal channels." India's objection to Article 10 is limited to the express terms of Article 10—postal channels—meaning email service is not precluded. *See also Sulzer Mixpac*, 312 F.R.D. at 331 ("[Postal mail and email] differ in relevant respects. Email communications may be more reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked."); *DisputeSuite.com*, 2015 WL 12911757, at *4 (stating that email "is sufficiently distinct from postal channels that the two should not be equated under the Hague Convention").

III

Finally, email service as ordered by Judge Menendez undoubtedly comports with due process. Due process requires that all methods of service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Volkswagenwerk*, 486 U.S. at 705 ("Under [the Due Process] Clause, foreign nationals are assured of either personal service, which typically will require service abroad and trigger the Convention, *or substituted service that provides 'notice reasonably calculated'* . . . . (emphasis added) (quoting *Mullane*, 339 U.S. at 314)). Although the plain terms of Rule 4(f)(3) do not make this requirement explicit, all methods of service must be reasonably calculated to give notice. *See* Fed. R. Civ.

P. 4(f)(1)–(2); *Rio Props.*, 284 F.3d at 1016 ("Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process."); *accord Louis Dreyfus Commodities Suisse, SA v. Fin. Software Sys., Inc.*, 703 F. App'x 79, 84 (3d Cir. 2017); *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015); *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 303 (2d Cir. 2005).

Early emails to Singh sending courtesy copies of the summons and complaint prompted him to obtain counsel, who has since appeared in this matter. *See* Sheu Decl. ¶¶ 2, 4–5, 9 [ECF No. 8], Ex. C [ECF No. 8-3], Ex. D [ECF No. 8-4]; Def.'s Mem. in Opp'n at 1 [ECF No. 13] ("Defendant's counsel appears specially and solely for the purpose of challenging Plaintiff's proposed means to effect service on Defendant."). And the record demonstrates that Singh frequently received business correspondence related to this matter at that email address. *See, e.g.*, Bernet Decl. ¶ 7 [ECF No. 9], Ex. A at 2 [ECF No. 9-1], Ex. B at 2 [ECF No. 9-2], Ex. E [ECF No. 9-5]. Email service is therefore "reasonably certain to inform" Singh of the pending lawsuit. *Mullane*, 339 U.S. at 315; *see also Power Elec. Distrib., Inc. v. Hengdian Grp. Linix Motor Co., Ltd.*, No. 13-cv-199 (ADM/HB), 2015 WL 880642, at *7 (D. Minn. Mar. 2, 2015) ("The failure to strictly adhere to the agreed means of service in the Hague Convention is not automatically fatal to effective service because the Convention should be read together with . . . Rule 4, which stresses actual notice rather than strict formalism." (citations and internal quotation marks omitted)); *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.") (collecting cases).

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED THAT** Singh's Objection [ECF No. 19] is **OVERRULED** and Magistrate Judge Menendez's October 26, 2018 Order [ECF No. 17] is **AFFIRMED** with the additional analysis provided in this Memorandum.


Dated:  January 7, 2019              s/ Eric C. Tostrud
                                     Eric C. Tostrud
                                     United States District Court